The first case on the call this morning is case number 120133 in re Benny M. Agenda number one. Counsel for Appellant, are you ready? And for Appellee, you may proceed. May it please the court, I am Assistant Attorney General Richard Hosek, Counsel for the people in this case and the appellant, and I urge the court to reverse the judgment of the appellate court and affirm the circuit court's judgment in this case. There is a mootness issue and argument relating to mootness exceptions raised by the appellee in this case. I believe I've thoroughly briefed that in our reply brief. If the court does have any questions on the mootness exceptions and their applicability, I would be glad to entertain those. If not, otherwise, I'd like to proceed to our argument that the appellate court correctly identified most of the standards governing the trial court's responsibilities in connection with the decision of whether to physically restrain a respondent in an involuntary commitment or involuntary medication proceeding, but that it did get one of those standards wrong, we submit. And in addition, I think the more important issues for the court's review and responsibility to ensure consistent review relate to not just the application of those standards to the facts of this case, but the relevant legal rules that govern what constitutes reversible error and who would have the burden of showing prejudice affecting the outcome of the case or, on the contrary, as the appellate court held, the absence of prejudice from a claim to error in a case, which is a significant issue. And that's really an issue of first impression in this court that we submit is as important, if not more important, than some of the other issues. This court has actively... So, Mr. Hunzik, you are conceding, then, that the booze factors do apply in a mental health proceeding? We do concede that, Your Honor. Okay. We do concede that there are some constitutional considerations that apply in civil proceedings. Obviously, not all of them. There's no Fifth Amendment issue. But the dignity of the court, the liberty interests of the respondent, all inform the need to have a proceeding in which restraints are not imposed under some blanket policy. The court itself is responsible for making the determinations whether the strong evidence is justified by the evidence. It must do so based on the particular circumstances of the individual case. It cannot delegate that responsibility to security officials. And the exceptions in which limited restraints are applied are when there is a risk of harm to someone in the proceeding. Whether there's a risk of flight, which was the situation here, invoked here, or whether there's a risk of disruption of the proceedings. We do agree. The appellate court said... You had a change of heart somewhere, though, right? Your PLA did not concede that fact. Is that right? I think there may have been a suggestion that it was not the appellate court's place to pronounce new rules that govern these cases. But I don't believe that there's any... Nothing really turns upon that. I know that the appellate courts are sensitive to the needs of respondents in these cases. Rightfully so. In similar circumstances, they sometimes say, if it were up to us to make these rules, this is what we would do. And we urge the Supreme Court to do so. But we're not making any hay on the fact that the appellate court identified those. It's certainly not a straight application this Court pressed. The Court has applied those rules under a common law basis to criminal proceedings following U.S. Supreme Court's decision in DECC, or consistent with that in the Boos case, and also in the Allen case, extended those to a bench trials. And it has then officially promulgated rules, Rule 430, following the Boos case, slightly different standards apply with respect to adult criminal trials. And then again, most recently, it has promulgated official rules governing juvenile delinquency proceedings. The only reason I bring it up is, presumably, the Court took this because that seemed to be the issue as framed in the PLA, and now we're left with, regardless of how you frame it, whether or not there's prejudice in this particular case, right? Doesn't this become rather a run-of-the-mill case now? I don't think so. And one of the things that the appellate court did was essentially say, despite equivocal pronouncements by appellate courts in other cases, as to what the standard for determining reversible error was, it essentially said that if there was a claim of error, it is incumbent upon the government to prove the absence of any prejudice beyond a reasonable doubt. That's a hugely significant departure from the general standards that apply in civil cases generally, and has been applied in commitment cases as well. That rule sometimes has been invoked by courts saying, even if that were the standard, I believe there's an appellate court first district case that said, even if that were the standard, these facts show harmless error beyond a reasonable doubt, but we're not holding that that's the standard. Here the appellate court essentially did that, and for reasons I'd be glad to elaborate on, that really puts the shoe on the wrong foot. It creates incentives, like we've seen in this case, where there was no objection during the trial to an inability to communicate with counsel between the defendant and counsel, and it was made by counsel that the restraints somehow contributed to the respondent's bizarre courtroom behavior that was not a matter of proof introduced by the respondent's counsel, nor was it subject of oral argument in the closing arguments, but then now the appellate court seized upon those and said, the government hasn't proven that there wasn't prejudice from the inability to communicate between the respondent and counsel by the application of restraints, which may have resulted in the respondent's bizarre courtroom behavior. Now, all of this information is in the possession of the respondent and presumably his counsel, and it's too easy to sit on your hands, not invoke those during the trial. We don't know what communications were prevented between them, but then say that the government has the responsibility after the proofs are closed, the closing arguments are complete, and say the government now has to prove that there wasn't prejudice. This is a hugely significant issue in these cases, and it's not one that we take lightly. Certainly there are a number of factors that the court can apply to determine whether reversible error has been established based upon some showing of prejudice. It's not an impossible burden. The common way of doing so is showing that there's overwhelming evidence to be made, and that the evidence wasn't even closely balanced. But an alternative way of showing prejudice is specifically related to the claimed error. Here the alleged inability to communicate with counsel, or the suggestion by the appellate court that the restraints somehow were the cause of the respondents' bizarre courtroom interruptions and outbursts. And so we would suggest that we're the court that has the ability to communicate with counsel where the evidence is in the possession of the respondent. It is consistent with case law generally, civil cases generally, and even in criminal cases except for constitutional error preserved for direct review to impose upon the party trying to show that type of prejudice that it did likely affect the outcome. Again, that's not an impossible burden to satisfy. We would submit that under any standard of review, the appellate court's decision on that point should be reversed. But we believe that this is a proper case for this court to exercise its important function to determine what the standards for determining what reversible error is. We also disagree with the appellate court's determination, which goes beyond the standards relevant to the trial court proceedings themselves, and say that the circuit, it's not enough for the record to clearly show that the basis for the trial court's decision to restrain the respondent is, but the trial court must explicitly state on the record his or her reasons for making that decision. Now, there's a shift between the Boos case itself, which doesn't use that must affirmatively state on the record language, and Rule 430, where the court took the extra step and made that an obligation of the court. So if the appellate court in this case was applying common law precedent-type principles, Boos doesn't support its holding on that point. And that is one of the areas in which we disagree with the appellate court as to the standards that apply in the circuit court. And that is, I think that's significant, because the appellate court here found that noncompliance with that, for the first time adopted standard for this type of proceeding, was grounds for reversal. Never said that there was any prejudice from this. And so to make that some type of, you know, legally unconstitutional, legal loophole that would establish a form over substance-type grounds for reversing these decisions, we think doesn't make any sense. Certainly if the court decides in the promulgation of official rules that it would track the language of Rule 430 for mental health proceedings and say that that is an obligation on the trial court in all these cases, then it is proper for this court to do so. But we think the appellate court erred, got out a little ahead of its skis, so to speak, and decided that that was going to be a new rule that was going to adopt and then apply to reverse the judgment in this case. Though that two-step holding is unwarranted, we think that the illustration of this case with respect to both the communication with counsel and the claimed prejudice, supposedly by the trial court against the respondent based upon the factors that the appellate court identified, are a good example as to why the court should not adopt a rule either of per se reversal, which can't be the case. The restraints are justified in some circumstances that cannot be then some type of structural error where if there's a conclusion after the fact that they were improperly applied, we pay no attention to prejudice and automatically reverse, there must be some opportunity to show harmless error or the lack of reversible error. And in this case the appellate court's conclusion that the respondent's reaction to being restrained, causing pain, aggravation, leading to the outburst, is to a great extent speculation. It's unsupported by the record. The record shows that the trial court in this case very carefully examined the issues, paid attention to the evidence relevant to the issues to be decided. The only suggestion that the restraints were a problem for the respondent was after he had described, he insisted upon describing an incident in which he grabbed and kissed an intern at the facility, there was a dispute about exactly how that played out, and then he said, this is the reason I'm deteriorating and suffering, referring to his restraints. But even his counsel admitted that he had been deteriorating for several weeks since he stopped taking his medicine. The judge noticed a visceral difference in his reactions and carefully analyzed the evidence and determined that the respondent was in fact acting in this way as a result of his decision not to continue taking medicine and that that was the justification for the ruling in this case. The appellate court, I think, Mr. Dusak, are you asking this court to overrule the appellate court, reverse the appellate court, even if we should find, as you're now conceding, that the boost factors apply, and if we find that the trial court did not properly apply those, but reverse simply because the trial judge was not aware that those were factors that he should have considered at the time? We do believe that the court should not affirm the appellate court's judgment based upon sort of a retroactive determination of factors that it was not told should apply to this case. So everybody else in the future will get the benefit of this, but Benny M. would not. Well, I think it depends a little bit upon what this court announces as the standards that apply, certainly with respect to the duty to state on the record explicitly if the court adopts that, the reasons for restraining, then that should apply prospectively only. And again, that doesn't mean that noncompliance with that categorically always results in reversal. There should be some reversible error analysis that applies to that. Not every obligation on the court is a reversal for noncompliance, certainly if there's a forfeiture, certainly if there's a showing of no prejudice whatsoever from that. But we do think that the appellate court's ruling did advance beyond established precedent. It announced that it was ruling as a first time on some of these things, and it relied upon those new pronouncements as a ground for reversing the judgment. To that extent, we think the appellate court's ruling should be reversed, but we do encourage the court to take this opportunity to affirm those parts of the appellate court's holding that it believes in its function of providing guidance for future decisions are correct, and to determine also specifically what the standard is with respect to whether the trial court must always explicitly state on the record the reasons for its decision, sort of equivalent to a mini-hearing on the issue. We also think, as I've indicated, that it's very important for the court to specifically address for future guidance to appellate courts and, of course, as precedent for this court in the future, what the standards are for determining when there is reversible error, and in particular, who has the burden of proving the existence of prejudice affecting the outcome or the absence of prejudice affecting the outcome. Unless the court has further questions, I'll save any further discussion until my rebuttal. Thank you, Your Honor. Thank you, Mr. Huzak. Ms. Fong? My name is Laurel Fong. I'm an attorney with the Legal Advocacy Service Division of the Illinois Guardianship and Advocacy Commission, and our office represents Benny M. We represented Benny M. at the appellate level and now here. May it please the court. Benny M. was brought to court both days of his involuntary medication hearing in shackles. Shackles are either leather or chain. Benny was brought to court in wrist and foot shackles connected by a belt at his waist. You can't even scratch your nose if you have an itch. You cannot adjust your zipper. You cannot adjust your seat. You have to take little steps because you can't catch yourself if you trip or fall. There is a reference in the record to where Benny is demonstrating something from the witness stand, and the officer takes his arm because there must always be somebody near you because you can't easily fall, and someone must be there to assist you. This case isn't a case where you can't easily fall. It's a case where you can't easily fall. This case is moot, and the state has not shown an exception to the mootness doctrine that applies at this level of review. As Justice Thomas pointed out during the state's argument, this case is now a run-of-the-mill type of case, and the state is asking this case and to decide whether or not what the trial judge did in King County was appropriate. And as Justice Thomas pointed out, the state's PLA asked this court to take the case because the state said the appellate court has now applied boos explicitly to civil mental health cases. Mark P. is a case that came about four years before Benny M., and Mark P. said trial courts and involuntary mental health cases must now at a minimum do something when a respondent comes to court in shackles, and at a minimum must have a hearing and place reasons on the record to explain why a person remains in shackles. And the respondent's counsel objected to the trial court's failure to state its reasons on the record, or to the court relying on the patient transport checklist in this case. Are the issues forfeited because of that? Your Honor, Jonathan C. B. says that if a court becomes aware, is aware, or becomes aware that a defendant, whether an adult or juvenile, is shackled, the trial court must conduct a boos hearing to determine whether there is a manifest need for restraint. That's a direct quote from the case. I'm sorry. The direct quote is at paragraph 76. We reaffirm our case law that if a trial court is aware or becomes aware that a defendant, whether an adult or juvenile, is shackled, the trial court must conduct a boos hearing to determine whether there is a manifest need for restraint. The words, is aware or becomes aware, are italicized in this case. The trial court must conduct a boos hearing to determine whether a defendant is shackled. That's in the opinion. So making the trial court aware... Doesn't our case law support that if there's shackling errors, they're not reversible unless the complaining party can show prejudice? Could you repeat that, Your Honor? Don't you have to show prejudice in this context, even with an error, error with respect to shackling? Well, shackling is considered inherently prejudicial. And in the case of shackling, it's considered inherently prejudicial. And in the case of shackling, in all of the cases, the error is on the trial court to show why the shackling is necessary. So first of all, we have to look at what the trial court did. In the case of a person with mental illness, because of the mental health code, because of the already existing concern about restraint, in the rights that mental health respondents have that's cited in our appellee's brief, there is already concern about only restricting a mental health recipient's rights when there is a serious and imminent risk of harm to self or others. So I would suggest that in a case like this, there is no need for the trial court to show prejudice. Was it error for the trial court to rely on the recommendation or report of the security officer? Well, this is no different from other cases where the trial court is deferring to security. This is no different from the earlier case of Mark P where the trial court deferred to security. As we know from the Auditor General's report, a transport security checklist is for purposes of transporting a person to court. And as we know from that Auditor General's investigation and resulting report, it seems as if all recipients at Elgin Mental Health Center may have been subject to a procedure that bore the burden of a recipient who did escape during transport about a month earlier. And then this new procedure was instituted. So what do we do with the fact that the trial judge said a number of times that he was trying to balance the interests here? You're saying he's just deferring, or is he in fact taking into consideration all the observations he's making, or is he just taking into consideration the condition of the respondent, etc. And over and over again at different places in the records, saying I'm trying to strike the right balance here. Is that deferring to the security officer? Well, I think the trial judge only said that maybe two times that he's trying to strike a balance. And he did say I'm trying to strike a balance between what security wants. And we have demonstrated cases in our appellee's brief that often what security wants is what's best for security. And it's easier for security. It's more convenient for security to make sure the person is secure, especially after a month before somebody had gotten away during transport to court. Here is a person who is not even alleged to be harmful. Can I just ask, maybe I missed this a bit. The judge, in my court at least, is saying he's trying to balance the security information given to me. Do we know specifically what information was given to the judge? In the patient transport checklist? Whatever the judge is talking about. He says I'm trying to balance both the security information given to me and your ability to participate. What information was he given? The judge was given a patient transport checklist. And we know what was on it? We know what was on it as we did obtain it shortly before this proceeding. It was not easy to obtain. I have a copy that I can present to the court today. It is a one page document. It says exactly what's in the Auditor General's report. It has a check mark by security or elopement risk. It has Benny's height, weight, I believe his eye color. Is this a new record? It is a new record. It was not in the record because the trial judge did not make it part of the record. It was not presented to defense counsel. So this is a one page document that I can give to the court today. And it's something that the state did not try to obtain. It's something that we tried really hard to obtain because we were also curious as to what this document might say. And when we found the Auditor General's report that was only issued in about 2016, it contained information about what may be in a patient transport checklist. It contains no reasons that explain what is included or why a person is listed as a security risk or an elopement risk. So if this court would like, that's something that we can amend the record with. But it's not part of the record. I wasn't sure what to do with that. Our agency wasn't sure what to do with that. But it's something that the trial judge, if the trial judge relied on it, should have made part of the record. And that's something that we can amend the record with. And it's interesting too, I think that the state has blamed the respondent, the respondent's counsel, for not including a document that the respondent had no control over, for not including that in the record. This was the trial court's responsibility. The trial court, if it relied on that, merely needed to hand that to the clerk, say file this in the record, or stamp this as evidence, include it. That was the trial court's obligation. Well, it's the court's obligation, according to Mark P, to make a record, find some reason to keep this person in shackles. So that was the existing law from 2010. And Congress, I don't know if you've heard of it, but Congress passed a law that contrary to what the state said, the Benny M. Appellate decision did not retroactively apply BOOS. Mark P said, I'm sorry, Benny M. said, sorry, can I get a drink of water? Benny M. said, the appellate court, based on Mark P, we are reversing. The appellate court did not follow Mark P, which required, at a minimum, that there be findings about why this person needs to remain in shackles. The appellate court did not do that. And, by the way, the state said the appellate court should not hear this case, or the appellate court did not think public interest applied at the appellate level, because there had already been guidance at the appellate level with the Mark P case. So the state is now asking this court to provide guidance, although at the appellate level it said no guidance was necessary. So in Benny M., the appellate court said, although we didn't do it in Mark P, we are now explicitly applying the BOOS factors. Going forward, going forward with cases in the future, BOOS shall now apply. But Mark P said, it's the court that needs to do something. It's the court that needs to decide whether a respondent, a civil mental health respondent appearing before it, should remain in shackles. We are asking this court to affirm the appellate court in Benny M. If the court finds that this case meets a mootness exception, the state should not hear this case. The state cannot show here that the capable of repetition yet avoiding review exception applies to it as a complaining party. And as far as the public interest exception, we have guidance now with both Mark P. and Benny M. Those cases are in accord. There is no disarray in the law. Does the mootness exception change at different stages of the appellate process, or as the state, I think, has decided? Or as the state argues that it's the controversy that determines whether or not the matter is moot? Well, the state did not cite to any case law saying it's the controversy that controls. And have you cited to any case law that says you can take a different position at the appellate court than you take here? Well, this court has always held the respondent to proving a mootness exception at every level of review, and has held the respondent to very strict standards of mootness and said that mootness exceptions must be applied very, very carefully. In the Hernandez case, I believe this court, it was the commitment of Hernandez, this court said, well, the court has, or there has been proof of, under public interest exception, this court has, or the appellant has shown question of a public nature and possibility of recurrence, but there's no need for guidance. So, no, you haven't shown, you haven't shown that the public interest exception applies. And we have to apply these exceptions very carefully. Now, the state has suggested that because of commitment of public interest exception, because of commitment of Hernandez, this court should vacate the appellate court's decision. And I disagree with that, because that commitment of Hernandez case is in a class of its own. It's a sui generis case. That case involved a sexually violent person, and the state had filed a notice of appeal prematurely at the appellate level. And the state had filed a notice of appeal prematurely at the appellate level. There was no discussion of mootness at the appellate level. The appellate level dismissed that appeal because of the premature jurisdiction. When it got to this court's level, this court level looked at whether it needed to decide the case and decided the public interest exception didn't apply, and then dismissed the, or vacated the appellate level, and then dismissed the, or vacated the appellate level, and then dismissed the, or vacated the appellate level, and then dismissed the appellate court judgment because the case was already moot at the appellate stage, but the appellate court didn't know it, because the sexually violent person had already had his conditional discharge pulled, because he had violated conditions. So that's sort of just a totally different type of case than what we're dealing with here. And I can find this is not moot. I mean, the public interest exception should apply. Since your time is getting away from you here, do you want to be heard on the merits of the issue? Ms. Standers? Your Honors, as we've said in our appellee's brief... I'm sorry. Let me just back up a moment. What I would like to point out is that Benny M. was prejudiced here by remaining in shackles for a period of three hours. He was not alleged to be harmful in the petition for involuntary medication that had been filed with the trial court, and the appellate court pointed that out. There was no evidence that he had ever escaped from anywhere, and this is somebody who had been back and forth to court before, back and forth to court again, and back and forth to court again, and back and forth to court again, and was a man from Cook County from Elgin Mental Health Center, and who had met with his mother for visits and for dinner without shackles, met with his court-appointed attorney without shackles, went to the gym without shackles, went to the weight room without shackles. I would ask the appellate court to look at Auditor General's report and the effect that had on Elgin Mental Health Center and on the transportation of individuals to court in shackles. This is a person who, on his first day of court, went to court in shackles. The shackles were removed. The second day of court, he's in court, brought to court in shackles. The shackles were not removed. The attorney asked for his writing hand to be removed. So he could communicate with counsel quietly. The judge said no. The attorney general refers to outbursts here today and in the appellee's brief and reply brief. Now, there were no references to outbursts in the transcript until that last day, two weeks after the second day of trial, when the court reconvened and the trial court gave its ruling on the petition for involuntary medication. What was never characterized as an outburst, suddenly, two weeks later, was called an outburst or were called things that Benny said in court, not considered outbursts at the time, not noted as outbursts, were then designated, classified as outbursts. So... When this spawn, your time has ended, you should conclude. Benny did experience prejudice and according to the AH case, a civil case, this court has recognized that when the error has been brought to the attention, the public defense attorney has been brought to the attention, the public defender did make this, the presence of shackles known. That preserved the error. According to Jonathan C.B., according to the criminal rule, according to the new juvenile rule, we're asking that this court affirm the appellate court's decision. If there is a need to add to that appellate court decision, we would ask the court to take into account the new minor rule that was put into place last November. Thank you. Thank you. Rebuttal. May it please the court. Mr. Hussack, we were dealing with a bench situation here, right? Yes. And would, there's typically less, less prejudice can occur in a bench setting. Does that have anything to do with your argument on prejudice or would your argument be the same if we were in a jury context? No, we think that that is a relevant consideration to the extent that somebody is arguing prejudicial error that affected the outcome. Trial court judges are trained to be impartial, to consider only relevant evidence, to set aside any preconceptions they may have. Jurors, unfortunately, do not have that training and temperament. And although I'm not suggesting that the imposition of restraints in a bench trial should be par for the course, far be it from that. But nonetheless, the fact that a trial is conducted before a judge rather than a jury is relevant to the case as I believe I've indicated. The trial judge in this case proceeded with extraordinary patience, exemplary impartiality. It evaluated all the evidence and the fact that it was a bench trial before a judge should inform on a common sense basis the appellate review evaluation of whether prejudicial error has been shown. I also, just briefly addressing the mootness issue, I have cited case law in my brief on that. I believe this court's precedent is inconsistent with the respondent's appellee's position in this court. If nothing else, this case is a great opportunity for the court to explain that mootness exceptions relate to the controversy and the circumstances surrounding it. It's not like some game played until the home team is ahead and then you blow the whistle and they win and there's no opportunity for further review. That also informs the relevance of the need for this court to address the issues. The appellate court said it was deciding some of these things as a matter of first impression. We believe it made errors with respect to the standards that apply in the circuit court. It relied upon that in reversing the circuit court with respect to whether there is an affirmative obligation always to state on the record the reasons for imposing restraints. That's something for this court to decide, not for the appellate court to expand on prior precedent and say that that's what whose holds, that's not what whose holds. And also the appellate court's decision said in essence that by virtue of considering the evidence that was induced by the security official in this case, that that amounted to simply delegating the issue, blindly deferring to the security official in this case with respect to the restraint issue. I think the record shows well-nigh conclusively the opposite. And even after the proceedings were concluded and the circuit court had said I'm trying to balance the information given to me with the respondent's ability to participate in this case. And he said I don't need to write notes or words to that effect. Speaking is better. And then communicated orally under the court's hearing with his counsel. And then at the very end of the case again, when his counsel said that he'd been complaining about the restraints, the judge said you never told me about that. I possibly would have done something about it if you brought it to my attention. And the respondent's counsel apologized. That shows that the court was conscientiously evaluating the facts of this case and making the decision itself. That's the court's responsibility. We agree with that. It's not up to the security officials to decide whether the important steps should be taken that was taken in this case. Now the respondent wants to then go beyond the issues that were presented in the trial court and presented in the appellate court and argue for the first time the sufficiency of the evidence to impose the restraints even though their counsel didn't object to the sufficiency of the evidence of that trial. And the circuit court simply said he assumed the veracity of the information provided to him. The record does not show that the, as respondents have argued, that the circuit court deprived his counsel of an opportunity to examine that evidence. It's exactly the opposite. The record shows that the court asked the respondent's counsel whether she had had the opportunity to look at it. She said she had not. And then he stated for the record the name of the document. The record doesn't affirmatively show that he then said, well, I'm not going to let you see it or you have no opportunity to object to its sufficiency to support restraints. And there was no such objection. And now there's an offer to introduce in this court evidence that was never made part of the record. And the theory is that for purposes of an appeal complaining about the sufficiency of the evidence, it's not the appellant's job to put it in the record. It's somehow the circuit court's job to protect and perfect the appeal of a party in front of the case. Courts don't always just call the balls and strikes, but sometimes it's incumbent upon an appellant to make a record to perfect an appeal. In this place, this stage of the case is not the opportunity to reopen the proofs and start to rehash the evidence and to rehash an issue as to which there was no objection made in the trial court. There is a presumption of correctness that applies to trial court judgments, and that presumption was disregarded by the appellate court in multiple respects. It also erred in several respects with respect to the determination of the standards that apply to what trial courts should do and the standard of review to determine whether there has been prejudicial error from any ruling with respect to restraints imposed upon a respondent in one of these civil mental health proceedings. Unless the court has further questions, I urge it to affirm the circuit court's judgment and reverse the appellate court's judgment to the extent it is inconsistent with the circuit court's judgment. Thank you so much, Your Honors. Thank you. Case number 120133, Henry Beniam, will be taken under advisement as agenda number one. Mr. Huzak, Ms. Spahn, thank you for your arguments this morning. You are excused.